**BROWN, a minor, etc., Appellant v KENNEDY, a minor, etc., et, Appellees.**

Ohio Appeals, 1st District, Clinton County.

No. 133. Decided November 2, 1942.

Hayes & Hayes, Wilmington, for appellant.
Pulse, Pulse and Roades, Cincinnati, for appellee.

## OPINION

By ROSS, J.

By this appeal on questions of law, which was duly filed, the motion of appellee to dismiss the appeal being therefore overruled, the appellant, who is the plaintiff, seeks to set aside a judgment in favor of defendant Insurance Company.

The basis for the plaintiff's contention that error has intervened is predicated upon a claim that the trial court do not justify the conclusions of law based upon such findings of fact.

From these last it appears that a policy of automobile insurance was issued to W. E. Kennedy, who was, by chance, the agent for the company issuing the policy. This policy included, among other things, a clause providing:

"The unqualified word 'Insured' wherever used includes not only the named insured but also any person while using the automobile and any person or organization legally responsible for the use thereof, provided the disclosed and actual use is with the permission of the named insured, or if the named insured is an individual, with the permission of an adult member of the named insured's household etc."

The named insured gave his daughter permission to use his automobile.

The Court finds:

"The Court finds that said Dorothy. Kennedy was nineteen years old in January, 1938. That she was a member of the household of the said W. E. Kennedy. That she had permission of her said father to use and drive said automobile. That she was attending Wilmington College at said time, and using said automo-

bile to go to and from her home in Hamersville, Brown County, Ohio."

Now, it further appears from the facts found by the trial court that the daughter used the automobile to drive to and from school, that upon a certain day while riding in the vehicle, she permitted Bennett White to drive the automobile and that while so doing the plaintiff received the injuries, which were made the basis of an action resulting in a judgment in favor of the plaintiff against both the daughter Dorothy Kennedy and Bennett White. No appeal was taken from this judgment and the plaintiff now seeks to recover from the defendant insurer upon the theory that Dorothy Kennedy being a member of the insured owner's household was using his insured automobile with his permission and consent, and that the plaintifffff received injuries because of the negligent operation of the vehicle while so used.

It was also found by the Court that the Insurance Company defended the action against Dorothy Kennedy and Bennett White.

The Court also found that White frequently rode with Dorothy Kennedy in the automobile, and White was permitted by the daughter to drive the car, but without the knowledge of the insured owner.

The plaintiff claims the insurer is estopped to deny liability because the insurer defended the suit against the daughter and White. The policy requires such defense, whether the action is valid or otherwise. Such action by the insurer does not constitute estoppel. The basis for the contention of such insurer that no liability accrues to the plaintiff is that the daughter being a minor had no authority to delegate to White the right to operate or drive the vehicle. That although the insured gave his daughter, who is a judgment debtor to the plaintiff, permission to use the car, and she was, at the time the injuries were received by the plaintiff, actually using it, she was not operating it, and hence, the policy does not extend to covering the instant judgment of plaintiff.

Such a contention can only be tenable if the words, using, used, and actual use. employed by the insurer in writing the policy have the limited meaning of operating, operated, or actual operation.

Now the policy in the clauses in question does not use the words drive or operate as many policies do. nor was the permission of the owner limited to operation or driving the car. In each instance, the broad term use was employed. The policy protected use of the car and the owner gave his daughter permission to use it.

The general rule is, that language used in a policy of insurance being selected by the insurer should be construed most favorably to the insured, giving the language used its fair and reasonable meaning. 5 Am. Jur., 806, §534; Couch on Insurance, §1175, Vol. 5, p. 4175; 22 **O. Jur. 339, 340,**

§§184, 185; **Duncan v John Hancock Mutual Life Ins. Co., 137 Oh St, 441, 445.**

This rule as applied to a case where the insurer claims a limited interpretation of the terms "use" or "using" would seem to mean that where the terms "use" or "using" are employed in the policy, and there are included within their fair definition and interpretation words or meanings which would attach liability or defeat it, the terms employed should be given the recognized fair and reasonable meaning which causes liability under the policy to attach.

In the instant case the terms in question are "use" and "using". Now a car would be used by a person, whether it was operated personally or through the services of another. If the insurer meant that liability should only attach when it was being operated or driven by the owner or some one with his consent, and it is claimed the word "used" includes the term "operated"—then the insurer should have employed the word carrying in its meaning the narrower limitation of liability.

The word "use" is defined as the "Purpose served—a purpose, object or end for useful or advantageous nature." (Oxford English Dictionary.)

This implies that the person receives a benefit from the employment of the factor involved. It is this benefit, purpose, or end which defines the use. I use a chisel to chip out a piece of wood. The removal of the wood is the use to which I put the tool. I use a book, for the purpose of transmitting the thought of the author to my brain. It is used as a vehicle for thoughts or ideas. I use a pen or pencil to draw a sketch or write a letter. The pen or pencil is thus an instrument by which I receive the benefit of having the diagram or thought in my brain impressed upon the paper. I employ an automobile for the purpose of transportation. I use it for the purpose of going from here to there. It is immaterial as far as this use, this benefit, this purpose, this end is concerned, whether in so acquiring this benefit, I actually operate the driving mechanism of the vehicle or employ another to do it.

Certainly, no one would say the owner himself was not using his automobile because his chauffeur operated the vehicle. How then does use by a permitter become limited to a case only where such permitter operates the driving mechanism of the vehicle?

In the instant case, the owner of the car, according to the findings of fact, gave his daughter permission to use the car. This permission was not limited to operation merely. A judgment was obtained against her for injuries caused by the operation of the car when she was using it for her own purposes, it being driven by another.

How can it be said, fairly interpreting the words used, giving the terms not a restricted unusual meaning, but the full width of definition, that the daughter was not using the vehicle? Evidently a jury must have so found, or there would be no judgment against

her, upon which to predicate the instant action against the insurer, who defended the action against her.

It is to be borne in mind that the predicate of this instant action against the insurer is not the judgment against the driver of the vehicle, White. If such were the case, a far different question would be presented bearing little, if any, resemblance to that here considered.

Certainly, it would be a narrower application of the term used, ignoring the general considerations mentioned, to require one using the car to use it in its entirety. The daughter of the insured was using the seat, which she occupied. She was using the sides and top to shelter her from the weather. She was using the wheels and tires, for upon them she was propelled through space. She was using the motor of the car, for by its power the vehicle in which she was riding was propelled along the road. Is all of this use to be ignored, simply because she did not hold the wheel—manipulate the gear shift, press the accelerator or brake pedal? Manifestly, this is restricting the full reasonable words, which the insured has written.

In **Pappas v Jeffrey Manufacturing Co., 139 Oh St, 637,** the Supreme Court extended the meaning of the word operator as used in §6308 GC, to include a non-resident corporation which did not own an automobile, because the vehicle was being physically manipulated by an agent, owner of the car, acting in the course and scope of his employment for the corporation. Little comfort it would seem, therefore, is found for the insurer even if the narrow term "operated." should be substituted for the wider term "used", for obviously White was driving the automobile under the direction and control of the daughter of insured.

There is nothing contained in the authorities cited in the briefs of the appellee all of which have been examined, which conflicts with the conclusions reached herein.

It is a matter of some surprise that no case has been found entirely dispositive of the exact question here presented. The nearest approach to a definite declaration upon the subject is found in Feitelberg v Matuson, 208 N. Y. S. 786. It must be admitted that the facts are in no way similar, still the action of the Court in construing a statute employing both the words "use" and "operate" is helpful. In that case it appears the action was brought to recover damages for injuries sustained by reason of the negligent operation of the defendant's automobile which the defendant had permitted another to use, who, although not driving the automobile, was present in the vehicle. At page 789 of the opinion the Court say:

"(2) The defendant also claims that the plaintiff cannot recover for the reason that the person to whom the car was loaned did not drive the car. The statute says, however, that the owner shall be liable for the acts of any person legally 'using or operating

the same.' The words are used disjunctively. The Legislature drew a distinction between 'using' and 'operating'. To 'operate' as distinguished from 'use', signifies a personal act in working the mechanism of the car. Witherstine v Employers' Liability Assurance Corporation, Limited, of London,:England, 235 N. Y. 168, 172, 139 N. E 229, 230 (28 A. L. R. 1298). As there stated:

" 'The driver operates the car for the owner, but the owner does not operate the car unless he drives it himself.'

"What was the purpose of adding the word 'use' unless it was meant to include the person who had the actual, though not physical control of the car, and who was constituted by the owner its master ad hoc. If the liability of the owner were limited to the.acts of the operator, the statute would become a dead letter in most cases. Its evasion would be an easy matter. The statute must be interpreted in harmony with its verbiage. We cannot hold that 'using' and 'operating' are interchangeable or synonmous words. **If the owner chooses to intrust his car to another person, he invests such person, so long as he uses the car, with the same authority in regard to the management of the car which the owner has. That authority includes the right to select the operator.** The statute so provides in unmistakable language. Of course, the liability of the owner ceases when the borrower, in turn, gives the use of the car to a third party without the owner's consent. It is significant that throughout the Motor Vehicle Law which constitutes article 11 of the Highway Law, the word 'use' is employed only in this connection." (Emphasis ours).

The fact that both the words "use" and "operate" are employed in the statute is noted—but it is also apparent that they are not synonymous in meaning. In the instant case the insurer could easily have restricted its liability by use of the word "operate", which it vainly contends is not only included in the word "use", but limits and defines the broader word. It is apparent that there is no basis for such limited definition.

In Maringer, etc. v Bankers Indemnity Ins. Co., 288 Ill., 335, a question arose in a policy insuring against liability for injuries to others caused by the vehicle insured. The question is presented whether or not a single instance of carrying passengers for a consideration was such **use** of the vehicle as to exclude liability under a clause excepting liability where the vehicle was **used** to carry passengers for a consideration express or implied. The Court in the opinion cites many authorities, among which is Treolo v Iroquois. Auto Insurance Underwriters. 348 Ill. 93. From all of these, as well as the principal case, it is apparent that isolated instances of employment of the vehicle for the purpose of carrying passengers, contraband liquor. etc., do not define the general use of the automobile.

In the instant case, here considered, the daughter was given general use of the vehicle by her father to go to and from school.

That general use is not modified by an isolated instance in which she permitted another to manipulate the steering devices of the car, even giving the word "use" a narrower restricted meaning.

In In Re Moor's Estate, 163 Mich. 353, at 358, the Court defines the word "use", true in another connection but, nevertheless, applicable here:

"It is further urged the word 'use', in the phrase 'she shall only have the use and interest of the same during her life,' should be interpreted as granting the power of consumption. Webster defines the word. used as a noun, primarily as follows:

" 'The act of employing anything, or of applying it to one's service; the state of being so employed or applied; application; employment; conversion to some purpose; as, the **use** of a pen in writing; his machines are in general **use**.'

"In Spooner v Phillips, 62 Conn. 62 (24 Atl. 524, 16 L. R. A. 461), the court in defining this word, said:

" 'What is the ordinary meaning of the use of a thing? It is not the thing itself, or any part thereof, but is that which the thing will produce. If it is a house or other building, or any other form of real estate, it is the rent which can be obtained for it. If it is money, it is the interest which it will earn."

To the same effect is Spooner v Phillips, 62 Conn., 62.

It has been hereinbefore noted that the benefit accruing to the daughter was transportation, not merely the experience of operating the vehicle. This was what she gained by the permission given by her father, this was what the policy covered, transportation, protection from the elements, a place in which to be seated. This was the use of the vehicle.

The instant case is easily distinguishable from one where the person given permission to use the car transfers its entire use to another. Had the daughter in this case loaned the automobile to White, who took it and drove it unaccompanied by the daughter, and for his own separate purposes, an entirely different situation would have been presented. The difference is that the daughter never ceased to use the car for purposes within the permission given by the insured.

The judgment is reversed, and the cause remanded for a new trial.

MATTHEWS, PJ., & HAMILTON, J., concur.